64 F.3d 661
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Otavio de MIRANDA SANTOS, Defendant-Appellant.
 No. 95-5008.
 United States Court of Appeals, Fourth Circuit.
 Submitted: July 27, 1995.
Decided: August 21, 1995.
 
 John M. MacDaniel, Miami, FL, for appellant.
 Helen F. Fahey, U.S. Atty., James L. Trump, Asst. U.S. Atty., Alexandria, VA, for appellee.
 Before ERVIN, Chief Judge, MOTZ, Circuit Judge, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM.
 
 
 1
 Otavio de Miranda Santos was convicted by a jury of participating in a money laundering conspiracy, 18 U.S.C.A. Sec. 1956 (West Supp.1995), and was sentenced to a term of 37 months imprisonment. Santos appeals his conviction, alleging that he was entrapped as a matter of law. He also argues that the district court clearly erred in sentencing him by denying him a minimal role reduction and by refusing to depart downward. We affirm in part and dismiss in part.
 
 
 2
 Santos was the manager of a travel agency in Ft. Lauderdale, Florida, called AP Travel Tours. It was a branch of his brother's travel agency in Miami. In conjunction with the travel agency, Santos individually operated a remittance company which transferred money nationally and internationally as an agent of Vigo Remittance Corporation. He was acquainted with Paulo Finamore, another travel agent and Vigo remittance agent who had a business in Washington, D.C., and who was a customer of his brother's Miami travel agency.
 
 
 3
 In June 1992, during an investigation of Finamore by the Drug Enforcement Administration (DEA), Finamore suggested to a confidential informant (CI) that $100,000 in cocaine profits belonging to a cocaine dealer who had been arrested should be transferred out of the country. Finamore had been a customer of the dealer and reportedly had transferred money for him in the past. The CI agreed, and Finamore transferred the money to an account in Mexico.
 
 
 4
 In October 1992, the CI introduced an undercover DEA agent posing as a drug dealer to Finamore. In the following year, Finamore repeatedly transferred large sums to accounts in Canada and England for the agent. Eventually, the agent asked whether money could be transferred from other locations. Finamore said he knew someone in Ft. Lauderdale who could help. On June 18, 1993, he called Santos in the agent's presence and told Santos he was sending him a customer who was "in computers" and who wanted to move some money from Miami with false identification. He explained that the customer would pay a 9% fee. This call was conducted in Portuguese because Santos, Finamore, and the CI are all Brazilian. The agent understood enough Portuguese to get the gist of the conversation.
 
 
 5
 Prior to the agent's meeting with Santos on June 24, 1993, several calls from Finamore to Santos concerning the mechanics of the agent's transaction were intercepted and recorded. Finamore told Santos that contraband but no drugs were involved, and again informed him that false identification would be used. Finamore also told Santos to shred or throw away the receipt which would normally go to a remittance customer.
 
 
 6
 The CI accompanied the agent when he met with Santos, and told Santos in Portuguese that the agent dealt in "stuff" ("coisa") rather than computers. He testified at trial that the slang term was understood in Brazil to mean cocaine. Santos replied that he understood, and completed the transaction. Immediately following the meeting, Santos called Finamore and laughingly told him that the money was all small bills. The next day, Santos again called Finamore and said he believed the money was drug profits. Nonetheless, he transferred the money to a Canadian bank. Santos subsequently transferred money to Canada for the agent in September 1993 and in March 1994. Each time, the agent paid a 9% commission, of which Santos received 5%. Finamore received 2%, and Vigo Remittance Corporation received 2%. The total amount transferred by Santos for the agent was $95,000, all of which he believed to be drug profits.
 
 
 7
 Santos asserted an entrapment defense at trial. He testified in essence that he was afraid to refuse to make the illegal transfers. On appeal, he argues that he was entrapped as a matter of law because he would never have broken the law if the undercover agent had not come to him. He relies chiefly on United States v. Hollingsworth, 27 F.3d 1196 (7th Cir.1994), which reversed two money laundering convictions on entrapment grounds because the government did not prove predisposition.
 
 
 8
 The government may solicit or present an opportunity to commit a crime to one predisposed to illegal activity, but may not "implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute." Jacobson v. United States, 503 U.S. 540, 548 (1992). Thus, if the government arguably has induced the defendant to commit a crime, the government must show that the defendant was already disposed to commit it before he was approached. The government may meet this burden by showing that the defendant readily responded to the offered inducement, so that it is apparent that his decision was his own, and not the result of government persuasion. United States v. Jones, 976 F.2d 176, 179-80 (4th Cir.1992), cert. denied, 61 U.S.L.W. 3772 (U.S.1993) (citations omitted). If the issue of entrapment is submitted to the jury, a conviction encompasses a finding of no entrapment, which may be overturned on appeal only if no rational fact finder could have found predisposition. Id. at 180.
 
 
 9
 Here, the evidence showed that Santos readily responded to Finamore's initial offer of a customer who wanted an illegal transfer. Even when he learned that the money was supposedly drug profits, Santos did not hesitate. Although Santos later complained to Finamore about the difficulty of depositing a large number of small bills, no persuasion was ever required by the agent. Therefore, viewed in the light most favorable to the government, the jury could rationally find beyond a reasonable doubt that Santos was predisposed to commit the crime.
 
 
 10
 Santos argued at sentencing that he had a minimal role deserving of a four-level downward adjustment, United States Sentencing Commission, Guidelines Manual Sec. 3B1.2(a) (Nov.1994), because he did not seek out the illegal business and had to be instructed by Finamore how to conduct the transaction. The adjustment is appropriate for a defendant who is among the least culpable of those involved in the conduct of a group. A defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a minimal role. Id., comment. (n.1). Although Santos was far less involved than Finamore, he laundered $95,000 in purported drug proceeds. Consequently, we cannot say that the district court clearly erred in finding that Santos had more than a minimal role.
 
 
 11
 Finally, Santos requested a downward departure on various grounds. The district court decided not to depart. We lack jurisdiction to review the court's discretionary decision. United States v. Bayerle, 898 F.2d 28 (4th Cir.), cert. denied, 498 U.S. 819 (1990).
 
 
 12
 We therefore affirm the conviction and sentence. That portion of the appeal which contests the district court's decision not to depart is dismissed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 
 13
 AFFIRMED IN PART, DISMISSED IN PART.